Nance *v.* Nance.

5-891                                         292 S. W. 2d 74

Opinion delivered July 2, 1956.

*Claude F. Cooper* and *Percy A. Wright,* for appellant.

*Max B. Harrison, Harrison & Harrison,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a divorce case in which is also involved the custody of three little girls, the children of the parties. The husband

and wife each desire a divorce, and each[1] wants the custody of the children.

The parties were married on June 12, 1948 and lived together until January 11, 1955. Mr. Nance farms several hundred acres of rented lands here in Arkansas. Mrs. Nance's parents moved to Gary, Indiana, and in December, 1953 the Nances went to Gary, and both husband and wife worked there until August, 1954 when, at Mr. Nance's insistence, they returned to Arkansas. Mrs. Nance's parents remained in Gary; and on January 11, 1955, Mrs. Nance left Arkansas and returned to Gary, where she was living when Mr. Nance filed this suit on January 31, 1955. He prayed for absolute divorce and custody of the children, and alleged as grounds for divorce indignities and also adultery. Mrs. Nance by cross-complaint sought absolute divorce on the grounds of indignities and cruel and barbarous treatment. Trial in the Chancery Court resulted in a decree awarding Mrs. Nance a divorce and (a) custody of the three little girls, with visitation rights to Mr. Nance; (b) $75.00 per month support money for the children; (c) a lump sum of $500.00 in settlement of property rights and dower; and (d) attorney fees and court costs. From that decree Mr. Nance brings this appeal presenting points which we group and discuss under suitable topic headings:

I. *Who Is Entitled To The Divorce?* Mr. Nance claims that the Trial Court should have awarded him a divorce on his complaint instead of awarding Mrs. Nance a divorce on her cross-complaint. When Mr. Nance filed his suit the parties had been separated for only a short time. Mr. Nance alleged that Mrs. Nance had been guilty of indignities and he also accused her of adultery, since the complaint said:

"That the defendant during the time she was living with the plaintiff and the children hereinafter mentioned went to Gary, Indiana, where she could be near

---

[1] At the expense of philosophizing, it does seem that if both parents are so anxious for custody, they should compose their marital difficulties and make a united home for their offspring: but the parents have decided otherwise.

and be in the company of her paramour; that she preferred this to living with the plaintiff and their children.''

Webster's Dictionary defines "paramour" as ". . . a lover . . . one who loves or is loved illicitly; one taking the place, without rights, of a husband or wife." So when Mr. Nance alleged that Mrs. Nance went to her "paramour," he in effect alleged adultery. Furthermore, in the evidence Mr. Nance named the alleged paramour and also offered the testimony of a priviate detective whom he had employed in Gary to shadow Mrs. Nance and report on all that she did; and the testimony of this private detective was designed to show that Mrs. Nance had been guilty of adultery. So the pleadings, as amended by the evidence, clearly charged adultery.

This Court finds the evidence insufficient to prove such a charge. Therefore, we have a case wherein an unsustained charge of adulty has been made and also one in which Mrs. Nance testified that the beatings she received at the hands of her husband forced her to leave him and seek shelter with her parents in Indiana. She was sufficiently corroborated as to Mr. Nance's barbarous treatment. So we have a case here very much like that of *Oliphant* v. *Oliphant*, 177 Ark. 613, 7 S. W. 2d 783; and we affirm the decree awarding Mrs. Nance a divorce.

II. *Custody And Support Of The Children.* These are children of tender age: the oldest little girl was born on July 4, 1949; the next little girl was born on July 12, 1951; and the youngest little girl was born March 5, 1953. When Mrs. Nance left Mr. Nance on January 11, 1955, she necessarily left the children with him; but in the decree from which comes this appeal, the custody of the three children was awarded Mrs. Nance; and we know — from another angle of this same case that was before us some time ago[2] — that she has the chil-

---

[2] Heretofore in this cause Mr. Nance asked us to require Mrs. Nance to return the children to the jurisdiction of this Court pending the appeal and he also sought to supersede the decree for maintenance until after this appeal is decided. We denied both motions. There have also been other pleadings and motions in this same cause.

dren in the home of her parents in Gary, Indiana. In the present record it was shown that Mr. Nance employed a 51-year old lady to be his housekeeper and to care for the little girls during the time he had them from January 12, 1954 until the decree herein which was filed on October 4, 1955.

The testimony shows that Mrs. Nance's mother (Mrs. Bryan) is 47 years of age; that the Bryans have a home in Gary; that Mrs. Bryan cared for the three little Nance children a portion of the time when the Nances were in Gary; and that Mrs. Bryan will assist Mrs. Nance in caring for the three little girls. From all of these facts this Court concludes that these little girls should be with their mother and grandmother rather than with a paid housekeper. The Chancellor awarded Mrs. Nance the sum of $75.00 per month for support of the three children. We do not consider this to be beyond Mr. Nance's ability to pay, in the light of the fact that he had been paying the housekeeper $60.00 per month and room and board for her services in caring for the children.

III. *Property Settlement And Attorney Fees.* The Chancery Court awarded Mrs. Nance $500.00 as a lump sum for property settlement and dower and awarded her $250.00 attorney fees. Mr. Nance has farming equipment and vehicles in which he has an equity of several thousand dollars; and Mrs. Nance gave him money to make some of the installment payments on the property. In view of all the evidence, we conclude that the Chancery Court did not abuse its discretion regarding property settlement and attorney fees.

IV. *Act No. 184 Of 1955.* This point has given us serious concern. The cause was submitted to the Chancery Court on July 28, 1955; and the Chancellor, on his own initiative — and so far as the record here shows without notice to either side — requested the Arkansas State Department of Public Welfare to investigate and report as to Mrs. Nance's situation in regard to custody of her three children. This request for information was claimed to be under Act No. 184 of 1955. The Arkansas State Department of Public Welfare did not make the in-

vestigation by one of its employees, but rather requested the Indiana Department of Public Welfare to make the investigation. In due time, the Indiana Department made the report to the Arkansas Department, and the Arkansas Department of Public Welfare forwarded the report to the Chancellor. After receiving the report the Chancellor made the decree of October 4, 1955, which referred to the said report from the Indiana State Welfare Department[3].

On appeal, appellant says that the entire decree should be reversed because of this welfare report, claiming, *inter alia*: (a) that any report under Act 184 had to be made by an employee of the Arkansas State Department of Welfare; (b) that the report was incompetent evidence; and (c) that no opportunity was ever allowed the appellant to contradict the report or cross-examine the person who made the investigation. Many pages might be written on the correctness of such extra-judicial investigations. In a few cases arising before Act 184 of 1955 we have referred to somewhat similar reports. See *Trannum v. George,* 211 Ark. 665, 201 S. W. 2d 1015; *Roberts v. Roberts,* 216 Ark. 453, 226 S. W. 2d 579; and *Ark. State Game & Fish Comm. v. Kizer,* 221 Ark. 347, 253 S. W. 2d 215. But in the case at bar we find it unnecessary to make any ruling concerning Act 184 of 1955 or the reports in this case, because this Court holds that the decree of the Chancery Court is correct in all matters, even entirely excluding the said reports.

Affirmed.

---

[3] In 35 A. L. R. 2d 629 there is an Annotation entitled: "Consideration of investigation by welfare agency or the like in making or modifying award as between parents of custody of children."